Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard C. Burson
Assistant United States Attorneys
402 East Yakima Ave, Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Case No.: 1:22-CR-02016-SAB |
| v. | |
| AARON PHELAN UPDYKE, | GOVERNMENT'S SENTENCING MEMORANDUM |
| Defendant. | Sentencing Hearing: February 22, 2023; 2:00 p.m. Yakima, Washington |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Richard C. Burson, Assistant United States Attorney for the Eastern District of Washington, submits the following United States' Sentencing Memorandum. For the reasons that follow, the United States respectfully recommends this Court impose a 6-month sentence of imprisonment.

1

### I.  Base Offense Level and Enhancements

The United States does not object to the maximum penalty, guideline or criminal history calculations in the Draft Presentence Investigation Report, ECF No. 63 ("PSIR").

### II.  Departure and Variance

There is no applicable departure or variance.

### III.  Section 3553(a) Factors for Sentencing

#### a.  The Nature and Circumstances of the Offense

On December 8, 2019, Yakima County Sherriff's deputies responded to a reported overdose at 5212 Crest Acres Place.[1] Yakima Fire was already on scene and informed the first responding deputy that the victim, Dylan R., was deceased.[2] The deputy located Dylan in Dylan's bedroom, on the floor covered with a quilt.[3] Dylan's father, Rocky, told the Deputy that he had found Dylan unresponsive in Dylan's bed that morning, and that Devin was already a little bit "stiff."[4] Rocky reported that he attempted CPR on his son, and administered Narcan, to no avail.[5] Rocky told the deputy that Dylan had overdosed before.[6] Rocky suspected that Dylan had received the pills that killed him from

---

[1] Bates 15636
[2] Bates 15636
[3] Bates 15636
[4] Bates 15636
[5] Bates 15636
[6] Bates 15636

2

Defendant.[7] Near Devin's body, detectives located a piece of a pill.[8] Devin's blood was tested and determined to contain fentanyl.[9]

Rocky's report that he suspected the pill that killed his son came from Defendant was not the first time law enforcement had heard Defendant's name. Agents were already aware of Defendant, due to a number of drug-tip-line and Crimestoppers complaints identifying Defendant as a drug dealer.[10] Indeed, during the investigation, agents spoke to a young man named David F., who told agents that that had bought drugs from Defendant 25 to 30 times previously.

Subsequent interviews led detectives to the young men who were with Defendant the night before Dylan was found by his father: Angel Z., Zach C., Dylan K., and Defendant.

After some initial reluctance, Angel Z. informed agents that he was picked up at his house by Devin and Defendant in the afternoon the day before Devin was found dead.[11] The three drove to a park, then to some pawn shops to pawn items for cash.[12] They then picked up Zach, who wanted to purchase pills from Defendant, but Defendant did not have any.[13] They then drove to Glenwood

---

[7] Bates 15636
[8] Bates 15636
[9] Bates 15658
[10] Bates 15614
[11] Bates 15625
[12] Bates 15625
[13] Bates 15625

Square on Tieton Drive in Yakima and parked.[14] A short time later, a Chrysler sedan arrived.[15] Defendant got out of the car, entered the Chrysler, and got back into Devin's car.[16] Angel said that Devin looked at the pills in Defendant's hand and "pleaded" with Defendant to sell him one for $10.00.[17] Angel witnessed a "transaction" between Dylan and Defendant, and witnessed Defendant give Zach pills.[18]

      Zach C. informed agents that the night before Devin's death, he reached out to Defendant to purchase fentanyl.  Defendant arrived at Zach's house in Devin's car, with Defendant in the front passenger seat.  Angel and an unknown individual (likely Dylan) were in the back passenger seats with Zach.  According to Zach, the group drove to Glenwood Square and parked.  A short time later, a maroon sedan arrived.  Zach gave Defendant $40-$60 and Defendant got out of Devin's car, went to the maroon sedan, and returned with pills.  Zach was unable to see if Devin gave pills to anyone else, but everyone except for Angel began smoking pills.

      Dylan K. informed agents that he knew Defendant from rehab and had purchased pills from Defendant 4-5 times in the past.[19] According to Dylan,

---

[14] Bates 15625
[15] Bates 15625
[16] Bates 15625
[17] Bates 15625
[18] Bates 15625
[19] Bates 15623

4

Defendant and Dylan picked him up the day before Devin's death and the three went to a residence where Defendant purchased some pulls.[20] Then the three drove to a park and smoked the pills, before going to Zesta Cochina (which is in Glenwood Square).[21] Dylan's memory was somewhat impaired.[22]

According to a young man named Reggie H., Defendant generally sold drugs, including "percs." Reggie said that Defendant had been selling pills soon after Devin's death.[23] When confronted by Reggie about selling pills so soon after Devin's death, Defendant replied something along the lines of "I gotta make a dollar, you know."[24]

### b. The Defendant's Characteristics and History

Defendant himself is a recovering addict. According to several witnesses whose interviews were disclosed in discovery, Defendant has a history of selling controlled substances, though no criminal history reflecting as such.

### c. The Need for the Sentence Imposed to Afford Adequate Deterrence and Protect the Public from Defendant

This is a tragic case. The parties – Dylan's parents included – can never be made whole any sentence. And to be frank, the United States believes that Defendant gave Dylan the pill that took Dylan's life, but doubts about meeting

---

[20] Bates 15623
[21] Bates 15623
[22] Bates 15623
[23] Bates 15616
[24] Bates 15616-17

5

its burden of proof to show that Defendant gave Dylan controlled substances that resulted in Dylan's death. As such, Defendant was never charged as such.

But whether not Defendant actually sold Dylan the pill that ended Dylan's life could be proved beyond a reasonable doubt or not, it is beyond dispute that Defendant's actions on December 7, 2019 caused, in part, Dylan's demise. Defendant, as a friend and as a fellow recovering addict, owned it to Dylan (who had recently come out of rehab) to be a positive influence, or at the very least, *not* play an active role in Dylan's relapse, whether by handing him the pill that killed him, arranging for the sale, or even merely influencing him. Defendant has never expressed remorse for playing any role in Dylan's death.

What is perhaps worse is the fact that *after* Dylan's death, Defendant reportedly continued to distribute controlled substances – likely the very same type that killed Dylan.

The reasonable conclusion to draw here is that Defendant has never accepted or even realized the gravity of what he pleaded guilty to – distributing fentanyl, which he knows is a deadly drug, to people he calls friends.

And a sentence of probation or time served won't make Defendant come to realize the gravity of his offense, or put differently, promote respect for the rule of law or deter Defendant in any meaningful way from repeating his conduct.

This Court should set a sentence that at least will have *some* lasting impact on Defendant that the death of his friend apparently did not.

### IV.    Conclusion

For the reasons stated herein, the government respectfully recommends a 6-month sentence of incarceration.

Dated: February 7, 2023.

                Vanessa R. Waldref
                United States Attorney

                *s/ Richard C. Burson*
                Richard C. Burson
                Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Defendant's counsel of record.

> *s/Richard C. Burson*
> Richard C. Burson
> Assistant United States Attorney